UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SUMMER HAYWOOD,**

    **Plaintiff,**

    v.                            **Case No.:_____**

**FLORIDA BEVERAGE CORPORATION,
D/B/A RACHEL'S,**

    **Defendant.**

_____/

**COMPLAINT & DEMAND FOR JURY TRIAL**

**COMES NOW**, Plaintiff, SUMMER HAYWOOD ("Ms. Haywood"), through undersigned counsel, pursuant to the Federal Rules of Civil Procedure, and sues Defendant, FLORIDA BEVERAGE CORPORATION d/b/a RACHEL'S ("Rachel's"), a Florida for-profit corporation registered and doing business in Casselberry, Seminole County, Florida, and alleges as follows:

**NATURE OF CLAIMS**

1. This is an action for damages, declaratory judgment, and injunctive relief to redress the deprivation of rights secured by (1) the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*., ("FMLA"), as amended by the Families First Coronavirus Response Act of 2020, 29 U.S.C. § 2601, *et seq*. ("FFCRA"); (2) unpaid minimum wages and unlawful tip pool under the Fair Labor Standards Act ("FLSA"); and (3) sex discrimination in violation of the Florida Civil Rights Act of 1992, Florida Statues, Chapter 760 ("FCRA") and the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").

## JURISDICTION AND VENUE

2. Jurisdiction is conferred upon this Court under 28 U.S.C. § 1331 and 29 U.S.C. §§ 2601, *et seq*.

3. The venue of this Court over this controversy is proper pursuant to 29 U.S.C. § 1391(b) as RACHEL'S has, or usually keeps an adult entertainment venue for transaction of its customary business in Casselberry, Seminole County, Florida.

## THE PARTIES

4. Ms. Haywood, at all times material hereto, was a resident of Orlando, Florida.

5. Ms. Haywood, at all times material hereto, worked at the RACHEL'S location in Casselberry, Seminole County, Florida.

6. Ms. Haywood, at all times material hereto, was RACHEL'S employee as that term is defined under the FMLA, FFCRA, FLSA, the FCRA, and Title VII.

7. RACHEL'S is a Florida corporation authorized to do business, authorized to transact business, and authorized to operate an adult entertainment venue in Casselberry, Seminole County, Florida, and at all times material hereto, has been doing business and is a covered employer under the FMLA with fifty (50) or more employees within a 75-mile radius of Ms. Haywood's former Casselberry, Seminole County, Florida worksite for each working day of twenty (20) or more calendar workweeks in the current or preceding calendar year of Ms. Haywood's discharge and within the meaning of 29 U.S.C. §§2601, *et seq*.

8. RACHEL'S is also covered employer under the FFCRA because it employed less than 500 employees at all times relevant to this Complaint.

9. RACHEL'S, at all times material hereto, was Ms. Haywood's employer under the FCRA and Title VII because it employed 15 or more employees at all times relevant to this Complaint.

10. RACHEL'S controlled Ms. Haywood's daily work activities and made decisions relating to Ms. Haywood's employment such that Rachel's was Ms. Haywood's employer as defined by FMLA, FFCRA, FLSA, FCRA, and Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Ms. Haywood has exhausted all administrative prerequisites and conditions precedent (if any) and she has filed this action within the applicable statutes of limitations.

## STATEMENT OF FACTS

12. Ms. Haywood began working for RACHEL'S as a bartender in a full-time capacity in or about December 2018 at its Casselberry, Seminole County, Florida location.

13. Ms. Haywood's job functions included the selling and serving of drinks and food.

14. Ms. Haywood was not an adult entertainer and; therefore, her job functions did not include dancing for or entertaining RACHEL'S patrons.

15. Ms. Haywood's weight never impaired her ability to perform her bartending job.

16. RACHEL's employed many overweight and heavy-set men to work at the

venue.

17. RACHEL'S employed Ms. Haywood for a year and a half without incident or disciplining her for any alleged misconduct.

18. During Ms. Haywood's employment, RACHEL's required her and her co-bartenders participate in an unlawful tip pool with the back of the house cooks for meals that were sold at the bar.

19. These cooks were not regularly tipped employees.

20. RACHEL'S never asked Ms. Haywood to sign an agreement consenting to her tips being shared with the venue's cooks.

21. On or about June 10, 2020, Ms. Haywood contracted COVID-19 after testing positive at a CVS Pharmacy.

22. Ms. Haywood immediately informed Mike Ricks, RACHEL's Director of Operations, that she tested positive for COVID-19.

23. Mr. Ricks instructed Ms. Haywood to quarantine and not come back to work until she tested negative so as not to infect staff or patrons.

24. Ms. Haywood did as she was instructed and she remained out of work for thirty (30) days until July 30, 2020, when she tested negative for COVID-19.

25. Prior to her quarantine, Mr. Ricks and other managers and supervisors at Rachel's ridiculed Ms. Haywood because of her heavy weight.

26. Ms. Haywood was subjected to comments that she was fat, she needed to join a gym, and that she did not fit the image that RACHEL's was attempting to display.

27. While quarantining for approximately thirty (30) days, Ms. Haywood gained weight and returned to work heavier that when her quarantine began.

28. Mr. Ricks allowed Ms. Haywood to return to work as a bartender.

29. Ms. Haywood worked several shifts until July 31, 2020.

30. However, she was inexplicably not put back on the schedule and was instead discharged.

31. Ms. Haywood was terminated for alleged poor performance.

32. However, no specific reason was given for her termination and no examples of alleged poor performance were communicated to her.

33. Ms. Haywood is claiming that she was fired because of her weight and, more specifically, because RACHEL's was holding her to a higher standard of physical than her male coworkers.

34. Also, Ms. Haywood is claiming that she was fired because she took approved an FMLA-qualifying medical leave under the FFCRA.

35. As a result of RACHEL'S aforementioned actions and omissions, Ms. Haywood has suffered substantial injury, harm, and damages.

36. RACHEL'S actions displayed intentional misconduct and/or gross negligence in that either RACHEL'S had actual knowledge of the wrongfulness of the conduct and the high probability that damage to Ms. Haywood would result and, despite that knowledge, intentionally pursued a course of conduct resulting in Ms. Haywood's injury and damages or RACHEL'S conduct was so reckless and wanting in care that it

constitutes a conscious disregard or indifference to the rights of Ms. Haywood.

37. RACHEL'S did not have a good faith reasonable belief that discharging Ms. Haywood was lawful.

38. Ms. Haywood has retained the law firm of Pérez Law, P.A. to represent her in this action and has agreed to pay said law firm a reasonable fee for its services.

**COUNT I**
**UNPAID LEAVE BECAUSE OF COVID-19 RELATED ABSENCE**
**IN VIOLATION OF THE FFCRA**

39. Ms. Haywood re-alleges and incorporates by reference all allegations contained in Paragraphs 1 through 38 above as if asserted herein.

40. Ms. Haywood tested positive for COVID-19 on June 10, 2020.

41. Ms. Haywood's Manager, Mr. Ricks, instructed her to quarantine.

42. Ms. Haywood followed Mr. Rick's instructions and quarantined through July 10, 2020.

43. Under the FFCRA employers which employ 500 or less employees were required to afford its employees two (2) weeks pay if the employee contracted COVID-19, tested positive for same, and/or needed to quarantine because of the virus.

44. According to the Department of Labor guidelines, RACHEL'S had to pay Ms. Haywood two weeks (up to 80 hours) of paid sick leave at the employee's regular rate of pay where the employee is unable to work because the employee is quarantined and/or experiencing COVID-19 symptoms and seeking a medical diagnosis; or two weeks (up to 80 hours) of paid sick leave at two-thirds the employee's regular rate of pay because the

employee is unable to work because of a *bona fide* need to care for an individual subject to quarantine, or care for a child (under 18 years of age) whose school or child care provider is closed or unavailable for reasons related to COVID-19, and/or the employee is experiencing a substantially similar condition as specified by the Secretary of Health and Human Services, in consultation with the Secretaries of the Treasury and Labor.

45. These leave payments were reimbursable to the employer by the IRS; therefore, RACHEL's had no legitimate reason for denying this paid leave benefit to Ms. Haywood.

46. RACHEL'S was an employer covered under the FFCRA.

47. Ms. Haywood was an employee protected under the FFCRA.

48. RACHEL's never paid Ms. Haywood the sick or medical leave that it was required to pay her under the FFCRA.

**WHEREFORE** Ms. Haywood respectfully requests that this Court hold RACHEL'S liable and that it award Ms. Haywood the following relief:

a) Damages in the form of any pay, wages, salary, employment benefits, or other compensation denied or lost by the foregoing acts;

b) Pre-judgment interest on the amount cited above calculated at the prevailing rate;

c) An additional amount as liquidated damages equal to the sum of the amount cited above and its interest;

d) Post-judgment interest;

e)   Declaratory judgment;

f)   Injunctive relief;

g)   An award of costs and all reasonable attorney's fees; and

h)   All other just, equitable, and proper relief to which Ms. Haywood and all other similarly situated employees may be entitled.

## COUNT II
## TERMINATION OF FMLA QUALIFYING LEAVE

49.   Ms. Haywood re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 38 above as if asserted herein.

50.   Ms. Haywood had a right under the FMLA to take medical leave as described above and by taking the leave, Ms. Haywood engaged in statutorily protected activity under the FMLA as amended by the FFCRA.

51.   Ms. Haywood took FMLA/FFCRA qualifying leave from June 10, 2020, through July 10, 2020.

52.   RACHEL'S terminated her 21-days after she returned from FMLA/FFCRA qualifying leave on July 31, 2020.

53.   The proximity in time between Ms. Haywood's protected leave and termination is so short that it creates an inference of FMLA/FFCRA unlawful termination.

54.   RACHEL'S took an adverse employment action against Ms. Haywood for engaging in such protected activity by discharging her because of her FMLA-qualifying absence.

55.   Defendants' discriminatory decision to discharge Ms. Haywood was

causally related to Ms. Haywood's health-related absences.

WHEREFORE, Ms. Haywood respectfully requests that this Court hold RACHEL'S liable and that it award Ms. Haywood the following relief:

a) Damages in the form of any pay, wages, salary, employment benefits, or other compensation denied or lost by the foregoing acts;

b) Pre-judgment interest on the amount cited above calculated at the prevailing rate;

c) An additional amount as liquidated damages equal to the sum of the amount cited above and its interest;

d) Post-judgment interest;

e) Declaratory judgment;

f) Compensatory damages for pain, suffering, and mental anguish;

g) Injunctive relief;

h) Front-pay or reinstatement in lieu of front-pay;

i) An award of costs and reasonable attorney's fees; and

j) All other just, equitable, and proper relief to which Ms. Haywood and all other similarly situated employees may be entitled.

## COUNT III
## SEX DISCRIMIANTION IN VIOLATION OF FCRA & TITLE VII

56. Plaintiff re-alleges and incorporates the allegations set forth in the Paragraphs of this Complaint numbered 1 through 38 above as if fully set forth herein.

57. Ms. Haywood was fired because of her sex.

58. Specifically, Mr. Ricks and other managers and supervisors ridiculed Ms. Haywood because of her heavy weight.

59. These men further told Ms. Haywood that she did not fit RACHEL'S image.

60. However, these men did not similarly ridicule overweight male employees working at RACHEL'S.

61. And, these men did not tell overweight male employees that they did not fit RACHEL'S image.

62. These comments were *per se* discriminatory because of sex because they show that RACHEL'S was holding female employees to a higher standard of physical appearance than male employees.

63. While on 30-day quarantine, Ms. Haywood gained substantial amount of weight.

64. She returned to work on July 10, 2020, and was fired 21-days later on July 31, 2020, for alleged poor performance.

65. However, no examples of alleged poor performance were given to Ms. Haywood and this reason for termination is pretext for sex discrimination.

66. The sex discrimination is that RACHEL'S perceived Ms. Haywood as too overweight to work as a female bartender at its venue whereas RACHEL'S condoned the employment of overweight male employees at is venue.

67. Ms. Haywood was terminated because RACHEL'S was holding her to a higher standard of appearance than her male coworkers because of her sex.

68. Ms. Haywood has experienced stress, anxiety, mental anguish, and embarrassment as a result of the discriminatory termination.

69. RACHEL'S actions were intentional, malicious and willful.

**WHEREFORE** Ms. Haywood prays for judgment against RACHEL'S for all damages to which she may be entitled, including, without limitation:

A. Declaratory judgment;

B. Injunctive relief;

C. Back pay and the value of all lost benefits plus interest;

D. Front pay or reinstatement;

E. Both pecuniary and non-pecuniary compensatory damages for pain, suffering, stress, anxiety, mental anguish, embarrassment, and loss of dignity;

F. Punitive damages;

G. Reasonable attorneys fees and costs of this action; and

H. All other relief under the law that is just and equitable.

## COUNT IV
## UNLAWFUL TIP POOL UNDER THE FLSA

70. Plaintiff re-alleges and incorporates the allegations set forth in the Paragraphs of this Complaint numbered 1 through 38 above as if fully set forth herein.

71. During Ms. Haywood's employment, RACHEL's required her and her co-bartenders participate in an unlawful tip pool with the back of the house cooks for meals that were sold at the bar.

72. These cooks were not regularly tipped employees.

73. RACHEL'S never asked Ms. Haywood to sign an agreement consenting to her tips being shared or split with the venue's cooks.

74. RACHEL'S claimed a tip credit for Ms. Haywood's hourly pay.

75. Therefore, Ms. Haywood was not paid regular minimum wage but was paid the lower tip employee hourly wage.

76. As a result, Ms. Haywood had to make up her pay through tips.

77. In contrast, RACHEL'S did not claim a tip credit for the cooks.

78. RACHEL'S paid the cooks the higher regular minimum wage.

79. Nevertheless, RACHEL'S forced Ms. Haywood to split her tips with these employee earning the higher minimum wage even thought they were not regularly tipped employees.

80. This constitutes an unlawful tip pool under the FLSA.

**WHEREFORE** Ms. Haywood prays for judgment against RACHEL'S for all damages to which she may be entitled, including, without limitation:

A. Declaratory judgment;

B. Injunctive relief;

C. Back pay and lost tips and the value of all lost benefits plus interest;

D. Liquidated damages;

E. Reasonable attorneys fees and costs of this action; and

F. All other relief under the law that is just and equitable.

## **DEMAND FOR JURY TRIAL**

Ms. Haywood demands a jury trial on and for all issues so triable.

>*/s/Daniel A. Pérez*
>DANIEL A. PEREZ, Esq.
>Florida Bar No.: 426903
>Pérez Law, P.A.
>860 N. Orange Ave., Suite 135
>Orlando, Florida 32801
>Tel: 407. 815.2250
>F: 407.815.2257
>dan@perezlawpa.com
>brene@perezlawpa.com
>Attorney for Plaintiff